IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ | : |
| GREGORY SURGICAL SERVICES, LLC, | Civil Action No.06-cv-462-JAG |
| Individually and on behalf of | : |
| all those similarly situated, | : |
|  | : |
| Plaintiffs, | : |
|  | : |
| v. | : |
|  | : |
| HORIZON BLUE CROSS BLUE SHIELD | : ORAL ARGUMENT REQUESTED |
| OF NEW JERSEY, INC. and | : |
| INGENIX, INC., | : |
|  | : |
| Defendants. | : |
| _____ | : |

---

**BRIEF OF PLAINTIFFS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

FILED BY:                               Neil Prupis (NP 5500)
Bruce H. Nagel (BN 6765)                Thomas Gentile (TG 6939)
Robert H. Solomon (RHS 4158)            LAMPF LIPKIND PRUPIS
NAGEL RICE & MAZIE, LLP                 & PETIGROW
103 Eisenhower Parkway                  80 Main Street
Roseland, NJ 07068                      West Orange, NJ 07052
(973) 618-0400                          (973) 325-2100
(973) 618-9194 (Fax)                    (973) 325-2839 (Fax)

ATTORNEYS FOR PLAINTIFFS


ARGUMENT DATE:  APRIL 24, 2006

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

       A.     The Applicable New Jersey State Regulations . . . . . . . . . . . . . . . . .     4

       B.     The Anatomy of a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

       C.     The Dropoff in Horizon's Payments to GSS . . . . . . . . . . . . . . . . . . .     10

ARGUMENT

III.   PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED
       AGAINST HORIZON BASED ON ITS ADMITTED BREACH
       OF N.J.A.C. 11:21-7.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

IV.    THE STANDARD OF REVIEW ON A MOTION TO DISMISS. . . . . . . . .     13

V.     THE ANTI-ASSIGNMENT PROVISIONS OF HORIZON'S POLICIES
       ARE  INAPPLICABLE TO GSS' CIRCUMSTANCES . . . . . . . . . . . . . . .     14

       A.     Horizon Was Aware of Patients' Assignments Of Benefits To GSS
              And Conducted Itself As If Those Assignments Were Effective. . . .     14

       B.     Horizon Takes Advantage of Patients' Assignments Of Benefits
              To GSS To Bring Great Benefits To Horizon. . . . . . . . . . . . . . . . . . .     17

       C.     Through Its Course Of Dealings, Horizon Consented To The
              Assignments Of Benefits, Waived The Anti-Assignment
              Provision, And Is Estopped From Now Arguing That The
              Assignments Of Benefits Are Void . . . . . . . . . . . . . . . . . . . . . . . . . .     18

       D.     Somerset Orthopedic Is Distinguishable. . . . . . . . . . . . . . . . . . . . . . .     21

       E.     Horizon's Consent, Waiver And Estoppel Are Disputed
              Questions of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

VI.    GSS HAS STANDING AS A THIRD-PARTY BENEFICIARY
       OF CONTRACTS BETWEEN HORIZON AND SUBSCRIBERS. . . . . . . .     25

i

VII.    NUMEROUS DISPUTED QUESTIONS OF FACT PRECLUDE GRANTING
        HORIZON'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . .    28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

## **TABLE OF AUTHORITIES**

<u>**CITE**</u>                                                                                     <u>**PAGE(S)**</u>

<u>Briglia v. Horizon Healthcare Servs., Inc.</u>, 2205 WL 1140687 (D.N.J. May 13, 2005)     23

<u>Broadway Maint. Corp. v. Rutgers, The State Univ.</u>, 90 N.J. 253 (1982). . . . . . . . .     25,26

<u>Brooklawn v. Brooklawn Housing Corp.</u>, 124 N.J.L. 73 (E. & A.1940). . . . . . . . . .     25

<u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663 (3d Cir. 1988). . . . . . . . . . . . . . . . .     13

<u>Columbia Hosp. at Med. City Dallas Subs., L.P. v. Legend Asset Mgmt. Corp.</u>,
Civ. A. No. 3:03-CV-3040-G, 2004 U.S. Dist. LEXIS 14890
(D. Tex. April 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21,24

<u>Garden State Bldgs., L.P. v. First Fidelity Bank, N.A.</u>,
305 N.J. Super. 510 (App. Div. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21,24

<u>Gillman v. Waters, McPherson, McNeill, P.C.</u>, 271 F.3d 131(3rd Cir. 2001). . . . . . .     24

<u>HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.</u>,
240 F.3d 982 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

<u>Hermann Hosp. v. MEBA Med. & Benefits Plan</u>, 959 F.2d 569 (5th Cir. 1992) . . . .     19,21

<u>Hunt v. Cromartie</u>, 526 U.S. 541 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     28

<u>Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters &</u>
<u>Engineers Health & Welfare Plan</u>, 25 F.3d 616 (8th Cir. 1994) . . . . . . . . . . . . . . . .     20

<u>Lobee v. Denby Motor Truck Co.</u>, 163 N.Y.S. 951 (Sup. Ct. 1917) . . . . . . . . . . . . .     21

<u>Maio v. Aetna, Inc.</u>, 221 F.3d 472 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . .     13

<u>Mortensen v. First Federal Savings and Loan Ass'n</u>, 549 F.2d 884 (3d Cir. 1977) . .     14

<u>Mortimer v. Board of Review</u>, 99 N.J. 393 (1985) . . . . . . . . . . . . . . . . . . . . . . . . .     13

<u>Protocare of Metro N.Y., Inc. v. Mut. Assoc. Adm'rs, Inc.</u>,
866 F.Supp. 757 (S.D.N.Y. 1994) (Mukasey, J.). . . . . . . . . . . . . . . . . . . . . . . . . . .     20

<u>Rieder Communities, Inc. v. N. Brunswick</u>,
227 N.J. Super. 214 (App. Div.), <u>certif. denied</u>, 113 N.J. 638 (1988). . . . . . . . . . . . . .     25

<u>Sames v. Gable</u>, 732 F. 2d 49 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

<u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165(3d Cir. 2000) . . . . . . . . . . . . . . . . . . .   13

<u>Shebar v. Sanyo Bus. Sys. Corp.</u>, 111 N.J. 276 (1988) . . . . . . . . . . . . . . . . . . . . . . . .   21,24

<u>Somerset Orthopedic Assoc. v. Horizon Blue Cross Blue Shield</u>,
345 N.J. Super. 410 (App. Div. 2001) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22,23

<u>Strulowitz v. Provident Life & Casualty Ins. Co.</u>,
357 N.J. Super. 454(App. Div. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

<u>Township of Morristown v. Women's Club of Morristown</u>, 124 N.J. 605 (1991) . . .   13

<u>Werrmann v. Aratusa, Ltd.</u>, 266 N.J. Super. 471 (App. Div. 1993). . . . . . . . . . . . . .   25

## **OTHER**

29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

N.J.A.C. 8:43A-1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

N.J.S.A. 17B-27A-19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4,5

N.J.A.C. 11:21-7.13  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,10,11,12,28

N.J.A.C. 11:20-3.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5,28

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13,14

Restatement (Second) of Contracts § 308 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

NAGEL RICE & MAZIE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

       - and –

LAMPF LIPKIND PRUPIS & PETIGROW
80 Main Street
West Orange, New Jersey 07052
(973) 325-2100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| | : Civil Action No. 06-cv-462-JAG |
| GREGORY SURGICAL SERVICES, LLC | : |
| INDIVIDUALLY, AND ON BEHALF | : Hon. Joseph A. Greenaway, Jr. |
| OF ALL THOSE SIMILARLY | : |
| SITUATED, | : |
| | : |
| | : |
| Plaintiffs, | : |
| v. | : BRIEF IN OPPOSITION TO |
| | : MOTION TO DISMISS AND IN |
| HORIZON BLUE CROSS BLUE SHIELD | : SUPPORT OF PLAINTIFFS' CROSS- |
| OF NEW JERSEY, INC., | : MOTION FOR PARTIAL SUMMARY |
| | : JUDGMENT |
| Defendants. | : |
| | : |

Gregory Surgical Services, LLC ("GSS"), individually and on behalf of all those

similarly situated, submits this brief in opposition to the motion to dismiss, or in the

alternative, for summary judgment, submitted by defendant Horizon Blue Cross Blue

Shield of New Jersey, Inc. ("Horizon"); and in support of GSS' cross-motion for partial

summary judgment.

I.     **PRELIMINARY STATEMENT**

For years Horizon has made payments directly to GSS on patients' claims that GSS, pursuant to assignments of benefits signed by the patients, has submitted directly to Horizon.  As part of the claims process, Horizon engages in an extensive dialogue with GSS, sends checks to GSS in payment on multiple patients' claims in a single check, and sometimes even deducts from a payment check an amount that Horizon believes it overpaid GSS on an earlier patient's claim.  Horizon saves a large amount of money and organizational effort by interacting with, and paying, GSS directly, instead of interacting with, and paying, individual patients.

In approximately October 2004, the amounts of the payments that Horizon makes to GSS abruptly decreased. GSS brings this litigation, individually and on behalf of all those similarly situated, to recover the full amounts that should have been paid to plaintiffs pursuant to the applicable insurance policies and New Jersey statutes and regulations.

In its motion, defendant argues that GSS does not have standing to bring this litigation due to anti-assignment provisions in Horizon's contracts with its subscribers. This argument fails, because unlike the precedents that defendant cites, Horizon through its course of dealing with GSS has consented to the patients' assignments of benefits, has waived the protections of the anti-assignment provisions, or else is estopped from asserting those provisions now.  In addition, GSS has standing to bring this action as a third-party beneficiary under the terms of the contracts between Horizon and its subscribers.

This Court should deny defendant's motion because GSS has standing to bring this action, and so that GSS can pursue discovery on the many disputed issues of fact in this case, including the issues of consent, waiver and estoppel concerning the anti-assignment provisions.


## II.   STATEMENT OF FACTS

GSS is an ambulatory surgical center licensed by the State of New Jersey. See Declaration of Michael Shannon at ¶ 2. An ambulatory surgical center is a facility at which outpatient surgeries are performed, which means that the surgeries performed at GSS never require the patient to stay overnight.[1] See id. Ambulatory surgical centers thus provide an alternative to a hospital outpatient surgery center for patients having same-day surgery. Licensed ambulatory surgical centers such as GSS are subject to regulations promulgated by New Jersey's Department of Health and Senior Services.

GSS is not a participating provider in Horizon's health insurance network (nor is GSS a participating provider in any insurer's health insurance network). See Declaration of Shannon at ¶ 3. This means that GSS does not have a contract with Horizon setting forth the terms under which Horizon will make payment for services that GSS provides to patients whom Horizon insures. Rather, GSS, as an out-of-network provider, provides services to patients whose Horizon insurance policies allow them to receive services from

---

[1] Regulations promulgated by the New Jersey Department of Health and Senior Services define "ambulatory surgical facility" as "a surgical facility in which ambulatory surgical cases are performed and which is licensed as an ambulatory surgical facility, separate and apart from any other facility license." N.J.A.C. 8:43A-1.3. The same regulations define "ambulatory surgical case" and "same day surgical case" as "synonymous terms for a surgical procedure performed on a patient in a surgical facility generally requiring anesthesia, with a facility-based post surgery procedure of at least one hour, and generally without the requirement of an overnight stay." Id.

providers who do not participate in Horizon's network. <u>See</u> <u>id</u>. Under the terms of certain of Horizon's policies, patients whom Horizon insures are entitled to payment from Horizon for a portion of the cost of services obtained from providers who are not participants in Horizon's network. The policies that allow patients to receive payment from Horizon for services received from out-of-network providers require the subscriber to pay higher premiums than policies that allow patients to receive services only from in-network providers. <u>See</u> <u>id</u>. at ¶ 4.

A.      **The Applicable New Jersey State Regulations**

New Jersey statutes and regulations promulgated by the New Jersey Department of Banking and Insurance govern the payments that insurers, such as Horizon, pay when patients whom Horizon insures receive services from out-of-network providers such as GSS. Under N.J.S.A. 17B-27A-19, every small employer health benefits carrier, as a condition of conducting business in New Jersey, is required to offer one of five standardized plans formatted by the Small Employer Health Benefit Board. Each of the standardized plans incorporates by reference a New Jersey Department of Banking and Insurance regulation that provides as follows:

> "(a)  In paying benefit for covered services under the terms of the SEHB plans provided by health care providers not subject to capitated or negotiated fee arrangements, small employer carriers shall pay covered charges for <u>medical services</u> on a ***reasonable and customary basis*** or actual charges, and for <u>hospital services</u>, based on ***actual charges***. Reasonable and customary means a standard based on the Prevailing Healthcare Charges System for New Jersey ... incorporated herein by reference published and available from Ingenix, Inc. ...
>
>> 1.  The maximum allowable charge shall be based on the 80th percentile of the profile.

> 2. Carriers shall use the profile effective as of July 1993, and shall
> update their databases within 60 days after receipt of periodic
> updates released by the Prevailing Healthcare Charges Systems."

N.J.A.C. 11:21-7.13 (emphasis added). The purpose of this regulation is to ensure

standardization in the means of calculating the amounts that insurers pay for services

provided by out-of-network providers in the small employer health group market.[2]

## B.   The Anatomy of a Claim

When a patient whom Horizon insures seeks to receive services at GSS, the

patient's doctor will provide GSS with all of the patient's relevant medical and insurance

information. See Declaration of Shannon at ¶ 5. A GSS billing clerk will then begin a

telephone dialogue with Horizon concerning the patient's insurance coverage. See id.

The first step in this dialogue is for a GSS billing clerk and a representative of Horizon to

complete together, during a telephone call, an Insurance Verification Summary form. See

id. This form contains the information that Horizon requires in order for patients whom

Horizon insures to receive payment from Horizon for services received from out-of-

network providers. See id.

The topics that GSS will discuss with Horizon during this dialogue include the

existence, nature and extent of the patient's out-of-network coverage; whether specific

procedures are covered under the applicable insurance policy; the amounts of applicable

co-payments and deductibles; pre-existing conditions; whether the patient has satisfied

applicable requirements for authorizations or referrals (such as authorizations from

---

[2] N.J.A.C. 11:20-3.1(e) and 11:21-7.13(a) create a private cause of action in favor of GSS and those similarly situated. See Sutter v. Horizon Blue Cross/Blue Shield of New Jersey, Docket No. ESX-L-3685-02 (unreported decision, attached to Cert. of Robert Solomon as Exhibit A) (The New Jersey Prompt Payment Act and other Statutes and Codes create a private cause of action on behalf of a physician claiming that Horizon failed to make prompt and timely payments of medical claims in violation of the Acts and Codes).

5

Horizon or referrals from a primary care physician); and other issues concerning the patient's insurance coverage. See Declaration of Shannon at ¶ 6.

In the initial telephone conversation and in subsequent telephone conversations, Horizon voluntarily and freely engages in a dialogue with GSS and provides to GSS the patient information that GSS needs to submit a patient's claim to Horizon. GSS maintains a time-stamped record of every communication that GSS has with any representative of Horizon. See Declaration of Shannon at ¶ 7.

Once GSS and Horizon have together determined that the patient has satisfied Horizon's requirements for out-of-network coverage, GSS will book the patient for a date on which the patient's procedure(s) will be performed at GSS. See Declaration of Shannon at ¶ 8. GSS requires that before the procedure(s) begin, the patient must complete and sign several forms. See id. One such form is the Patient Registration Information form. The Patient Registration Information form includes a section entitled "Assignment of Benefits," which states, among other things, that "I hereby assign and transfer to Gregory Surgical Services LLC all insurance benefits payable to me by my insurance company(s) as specified above for services performed and costs incurred in connection with this procedure." See id.

A second form that GSS requires the patient to complete and sign before the patient's procedure(s) begin states that GSS "expect(s) you, the patient, to submit any payment(s) made payable to you by your insurance company, specifically for services rendered at *Gregory Surgical Services, LLC* on the date of service specified in the label affixed above right." See Declaration of Shannon at ¶ 9. This form further states that "Failure to comply with this request will result in your account remaining active, with the

6

possibility of any uncollected debts being forwarded to *Sa-Vit Collection Agency* and their legal department for collection." See id.

A third form that GSS requires the patient to complete and sign before the patient's procedure(s) begin is a letter from the patient to Horizon. See Declaration of Shannon at ¶ 10. In this letter the patient instructs Horizon to mail payments directly to GSS (or, if the policy prohibits direct payment to providers, to make payment in a check payable to the patient but mailed to GSS). See id. This letter is mailed to Horizon as soon as the patient signs it. See id.

A fourth form that Gregory Surgical Services requires the patient to complete and sign before the patient's procedure(s) begin is a HIPAA Notice. See Declaration of Shannon at ¶ 11. When signing the HIPAA Notice, the patient authorizes his or her insurance company to release to GSS "information pertaining to your medical record such as claims processed or in process, payments made or to be made, overall eligibility, and benefit information (i.e., deductibles, co-pays)." See id.

A fifth form that GSS requires the patient to complete and sign before the patient's procedure(s) begin is a Patient Right's form. See Declaration of Shannon at ¶ 12. When signing the Patient Right's form, the patient agrees (among other things) to "Supply insurance information and pay bills promptly so that Gregory Surgical Services LLC can continue to serve you effectively." See id.

Pursuant to the forms that a patient signs prior to receiving services at GSS (which include multiple assignments to GSS of the patients' benefits), GSS assumes all responsibility for interacting with Horizon concerning the patient's claim under the

policy, including all responsibility for receiving payment from Horizon. <u>See</u> Declaration of Shannon at ¶ 13.

After the patient's procedure(s) are performed at GSS, the physician who performed the procedure(s) creates a document listing all of the procedures that were performed. <u>See</u> Declaration of Shannon at ¶ 14. This form is known as a "routing sheet" or a "superbill." <u>See</u> <u>id</u>. The physician also creates a document called an "op report," which describes in medical detail each of the procedures that were performed. <u>See</u> <u>id</u>. Using the information on the routing sheet, a GSS billing clerk creates a UB92 form, which lists (among other things) all of the patient's procedures and insurance information, and states (and totals) the amounts owed to GSS for the facility fee for each procedure. <u>See</u> <u>id</u>.

GSS then prepares a claim, which GSS submits to Horizon. <u>See</u> Declaration of Shannon at ¶ 15. The claim that GSS submits to Horizon includes copies of the UB92 form and the op report. <u>See</u> <u>id</u>. As a matter of course, Horizon accepts claim forms and doctors' reports that GSS submits directly to Horizon. <u>See</u> <u>id</u>. Never has GSS received from Horizon any notice that Horizon has declined to consent to the assignments of benefits that patients make to GSS. <u>See</u> <u>id</u>. Horizon usually responds to GSS' claims between 14 and 30 days of submission. <u>See</u> <u>id</u>.

In most cases Horizon responds to claims by making payment directly to GSS. <u>See</u> Declaration of Shannon at ¶ 16. Horizon has made such direct payments to GSS for many years. <u>See</u> <u>id</u>. Horizon often combines its responses to claims concerning several patients in a single transmittal to GSS, including a single check payable to GSS representing payment on claims concerning those multiple patients. <u>See</u> <u>id</u>. Other times

8

Horizon responds to a claim concerning a single patient alone, including a check payable to GSS representing payment on the claims concerning that one patient. See id.

On some occasions, sometimes months after making payment to GSS on a particular claim, Horizon concludes that it overpaid GSS with regard to that claim. See Declaration of Shannon at ¶ 17. Horizon adjusts for such overpayment by deducting from the next aggregate check that it sends to GSS the amount that Horizon believes it overpaid GSS on the earlier claim. See id.

Although in most cases Horizon responds to claims by making payment directly to GSS, in other cases Horizon responds by sending to GSS an Explanation of Benefits form denying the claim. See Declaration of Shannon at ¶ 19. In response to some such denials, a GSS billing clerk will call Horizon and will explain to a Horizon representative the reasons why the claim should be honored. See id. Until recently, this approach was extremely successful. See id.

In response to other denials by Horizon of GSS' claims, GSS will initiate a formal appeal process with Horizon. See Declaration of Shannon at ¶ 20. Prior to December 1, 2005, GSS initiated such appeals by writing a letter to Horizon stating the basis of the appeals, to which GSS attached all of the forms having to do with the claim (including all of the forms that the patient completed and signed prior to the procedures). See id. Horizon would typically respond to such appeals within 30 days. See id. While an appeal was pending, GSS and Horizon would communicate often by telephone regarding the status and the substance of the appeal. See id. On or about December 1, 2005, Horizon for the first time told GSS that Horizon would require the patient to sign any appeals. See id.

9

C.    **The Dropoff in Horizon's Payments to GSS**

From the time that GSS began its interactions with Horizon through approximately October 2004, Horizon has made direct payments to GSS on patients' claims that GSS had submitted directly to Horizon. In or about October 2004, the amounts of the payments that Horizon makes to GSS abruptly decreased, see Declaration of Shannon at ¶ 18, signaling that Horizon's payments to GSS had departed from the requirements of N.J.A.C. 11:21-7.13. Horizon now pays much less than the actual charges that GSS bills, and much less than what GSS believes to approximate the reasonable and customary charges for the services rendered. See Declaration of Shannon at ¶ 18. GSS now brings this litigation, individually and on behalf of all those similarly situated, to recover the full amounts that should have been paid to plaintiffs pursuant to the applicable policies and New Jersey regulations.

**ARGUMENT**

**III. PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST HORIZON BASED ON ITS ADMITTED BREACH OF N.J.A.C. 11:21-7.13**

Horizon is a defendant in a case pending in the United States District Court for the District of New Jersey entitled Wayne Surgical Center v. Horizon, civil action number 05-4874 (JAG) ("Wayne Surgical Case").[3] The Wayne Surgical Case is substantially similar to this case and asserts virtually identical class action claims on behalf of two ambulatory surgical centers. (A copy of the Second Amended Complaint in the Wayne Surgical Case is attached to the Solomon Cert. at Exhibit B). When pending

---

[3] The Wayne Surgical Case was originally filed in New Jersey state court. The case was removed and remanded. Thereafter, the case was once again removed. Plaintiffs filed a motion to remand. The motion to remand has been fully briefed and is pending before the Court.

10

in New Jersey state court, Horizon filed a motion to dismiss the Wayne Surgical Case.  In its moving papers in the Wayne Surgical Case, Horizon contends that it did not rely upon or use data provided by Ingenix when determining the amounts that Horizon would pay for services provided by Wayne Surgical Center, arguing that those services are neither medical services nor hospital services. See Solomon Cert. at Exhibit C, Horizon Br. at 16 ("Horizon does not base the reimbursement for charges by Wayne Surgical Center on Ingenix data"); see Certification of Robert Marino at ¶ 15[4] ("Horizon ... does not use any data provided by Ingenix in determining the benefit or reimbursement paid for the facility fee for charges by Wayne Surgical Center."). This stunning admission mandates the entry of partial summary judgment against Horizon as a matter of law.[5]

Pursuant to N.J.A.C. 11:21-7.13(a), all carriers who pay benefits to out-of-network providers pursuant to small employer health benefit plans are required to reimburse "medical services, on a reasonable and customary basis or actual charges, and ... hospital services, based on actual charges."  The regulation further provides as follows:

> Reasonable and customary means a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when the services or supplies are provided in such state, incorporated herein by reference published and available from the Ingenix, Inc. 12125 Technology Drive, Eden Prairie, Minnesota 55344.

By the express terms of the Code, Horizon is obligated to base its reasonable and customary reimbursements upon data supplied by Ingenix (or upon actual charges for

---

[4] In support of its motion to dismiss in this case, Horizon relies upon the Certification of Robert Marino, which was originally filed in support of Horizon's motion to dismiss in the Wayne Surgical Case.

[5] With regard to the Wayne Surgical Case, Horizon does not dispute the fact that it does not use the Ingenix data.  Similarly, Horizon will not dispute that it does not use the Ingenix data with regard to GSS.

hospital services).  Horizon admits that it did not base its reasonable and customary reimbursements on that data.

In opposing this cross-motion, Horizon will likely argue, as it did in the motion to dismiss in the Wayne Surgical Case, that N.J.A.C. 11:21-7.13(a) does not apply, contending that GSS provides neither medical nor hospital services. Horizon will assert that ambulatory medical centers provide some type of service other than medical or hospital services and therefore fall outside the scope of the Code. This argument, which was made in the Wayne Surgical Case, is preposterous.

GSS and similar ambulatory surgery centers provide same-day surgical services and supplies that are identical to the services and supplies that are supplied by the same-day surgery center of any hospital. See Declaration of Shannon at ¶ 2. GSS, like the same-day surgery center of any hospital, provides a center where patients can obtain a variety of surgical procedures on an out-patient and same-day basis. Thus pursuant the express terms of N.J.A.C. 11:21-7.13, GSS and similarly situated ambulatory surgery centers provide "hospital services" and thus are entitled to reimbursement based upon "actual charges."

Alternatively, if the services provided by GSS are not deemed to be consistent with "hospital services" as defined by the Code, then the only other conclusion is that GSS provided "medical services" as set forth in N.J.A.C. 11:21-7.13. Medical services include services and supplies. Id. Thus, GSS' facility fee, supplies fee, and other charges, which are incurred in connection with ambulatory surgical care, are thus within the meaning of the term "medical services." There is no other reading of the words "medical

services" which would remove ambulatory surgical centers from the ambit of the Code provisions.[6]

As a rule, statutes must be interpreted based upon their plain meaning. Township of Morristown v. Women's Club of Morristown, 124 N.J. 605, 610 (1991); Mortimer v. Board of Review, 99 N.J. 393, 398 (1985). Here, the meaning of the applicable Code provisions are clear and unambiguous. Hospital services and medical services must be reimbursed by carriers according to a regulatory standard. Horizon has admitted violating that standard, so partial summary judgment should be entered as a mater of law.

## IV.   THE STANDARD OF REVIEW ON A MOTION TO DISMISS

Under Rule 12(b)(6), a motion to dismiss should be granted only when, "accepting all the allegations in the complaint to be true, and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to show that it is entitled to the relief being sought." Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).   To withstand a Rule 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted. Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988).

In reviewing the motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in the light most favorable to plaintiffs. Maio v. Aetna,

---

[6] The legislative history underlying the regulation suggests that the unavailability of data is the reason for the distinction between hospital services and medical services. Specifically, the Board of the SEHB noted, in the course of drafting the regulation, that "the Board will require payment of hospital bills based on actual charges," because HIAA (the original compiler of what is now the Ingenix database) no longer included reimbursement data on hospital charges. The origin of the distinction between hospital services and medical services thus suggests that there can exist no other category of services.  See 30 N.J.R. 3842.

Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In order to grant a 12(b)(6) motion to dismiss, the Court must find that plaintiffs will be unable to prevail even if they prove all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint.  Id.

## V.  THE ANTI-ASSIGNMENT PROVISIONS OF HORIZON'S POLICIES ARE INAPPLICABLE TO GSS' CIRCUMSTANCES

The provisions of Horizon's insurance contracts that purport to invalidate assignments of benefits or interests under those policies are not applicable to the circumstances of GSS and similarly situated ambulatory surgical centers. Horizon, through its multiyear course of dealings with GSS, has consented to patients' assignments of benefits, has waived its rights to object to such assignments of benefits, and is equitably estopped from now arguing that such assignments of benefits are void.  GSS thus has standing to bring this action as the assignee of patients' claims.

### A.    Horizon Was Aware of Patients' Assignments Of Benefits To GSS And Conducted Itself As If Those Assignments Were Effective

Over the course of Horizon's many years of dealings with GSS and similarly situated ambulatory surgical centers, Horizon has had full knowledge that such ambulatory surgical centers receive assignments of benefits from patients, and at all times has conducted itself as if those assignments were effective.

It is the routine practice of GSS to require every patient to sign assignment of benefits forms before GSS provides services to that patient. See Declaration of Shannon

at ¶ 8.  The patient, by signing the assignment of benefits form, explicitly assigns to GSS certain rights, including (but not limited to) the right to receive payment directly from Horizon.  See id.[7]

It is also the routine practice of GSS to transmit to Horizon (among other materials) the letter from the patient to Horizon in which the patient instructs Horizon to mail payments directly to GSS (or, if the policy prohibits direct payment to providers, to make payment in a check payable to the patient but mailed to GSS).  Thus, Horizon is fully aware of the assignments of benefits.  Pointedly, never has GSS received from Horizon any notice that Horizon has declined to consent to the assignments of benefits that patients make to GSS.

Rather than declining to consent to such assignments of benefits, Horizon at all times has conducted itself as if those assignments were effective.  Throughout the time GSS provides services to a patient whom Horizon insures, Horizon engages in a dialogue with GSS concerning the claims.[8] And as a matter of course, Horizon accepts claim forms and doctors' reports that GSS submits directly to Horizon.  See Declaration of Shannon at ¶ 10, 15, 16.

---

[7] In its motion papers, Horizon does not dispute that GSS has received such assignments of benefits from its patients.  Rather, Horizon disputes only whether those assignments of benefits are enforceable in light of the anti-assignment provisions contained in Horizon's policies.

[8] Such communication concerns, among other things, matters such as the existence, nature and extent of the patient's out-of-network coverage; whether specific procedures are covered under the applicable insurance policy; the amounts of applicable co-payments and deductibles; and whether the patient has satisfied applicable requirements for authorizations or referrals (such as referrals from a primary care physician).  See Declaration of Shannon at ¶ 6.

With regard to most of the claims submitted by GSS to Horizon, Horizon makes payment directly to GSS.[9]  See Declaration of Shannon at ¶ 16. Very often Horizon in one check makes payment to GSS for services that GSS provided to multiple patients. See id. These checks are made payable to GSS. See id. Voluminous paperwork accompanies the dealings between Horizon and GSS.  See Declaration of Shannon at ¶ 15.

In limited cases, Horizon responds to claims submitted by GSS by sending to GSS an explanation of benefits form denying the claim. See Declaration of Shannon at ¶ 19. In response to some such denials, a GSS billing clerk will call Horizon and will explain to a Horizon representative the reasons why the claim should be honored. See id. For years, Horizon routinely communicated directly with GSS on these types of claims. This approach was extremely successful with many of the claims being resolved between GSS and Horizon. See id.

In response to other denials by Horizon of GSS' claims, GSS will initiate a formal appeal process with Horizon. See Declaration of Shannon at ¶ 20.  Prior to December 1, 2005, GSS initiated such appeals by writing a letter to Horizon stating the basis of the

---

[9]    Horizon Senior Vice-President Robert A. Marino certifies in his Certification that "[w]hen services are performed by a non-participating provider, Horizon makes payment directly to the subscriber pursuant to the Horizon-subscriber health benefits contract and the subscriber is responsible for any amount due to the provider." Marino Cert. ¶ 5.  GSS emphatically disputes this assertion of fact.  As described in detail herein and in the accompanying Declaration of Michael Shannon, Horizon for many years has routinely made payments directly to GSS for services that GSS provides to patients who are insured by Horizon. See Declaration of Shannon at ¶ 16. This dispute of fact as to the fundamental nature of the relationship between Horizon and GCC is by itself grounds to deny Horizon's motion to dismiss, since the nature of that relationship will determine whether Horizon has consented to assignments of benefits, waived its rights to object to such assignments of benefits, and/or is estopped from now arguing that such assignments are void.  See Section V.C, infra.

appeals, to which GSS attached all of the forms having to do with the claim (including all of the forms that the patient completed and signed prior to the procedures). See id. Horizon would typically respond to such appeals within 30 days. See id. While an appeal was pending, GSS and Horizon would communicate often by telephone regarding the status and the substance of the appeal. See id. Horizon's agreement to deal directly with GSS continued for many years.

In light of the foregoing facts, it is not disputed that Horizon at all times was aware of patients' assignments of benefits to GSS and conducted itself as if those assignments were effective.

**B.    Horizon Takes Advantage of Patients' Assignments Of Benefits To GSS To Bring Great Benefits To Horizon**

Through its course of dealings with GSS, Horizon takes advantage of patients' assignments of benefits to GSS, thereby bringing great benefits to Horizon. Horizon's established practice of accepting claim forms from GSS, communicating with GSS about the patient's coverage, and making payment directly to GSS effectively cuts the patient "out of loop" with regard to the administrative, paperwork and payment aspects of the patient's claim. Horizon thus enjoys the benefit of dealing directly with the professional staff of GSS, which is knowledgeable and experienced concerning the claims process and its requirements. This benefits Horizon in two ways. First, it relieves Horizon of the onerous administrative responsibility of interacting with patients directly concerning the complicated requirements of Horizon's policies and of applicable regulations, which many (if not most) patients simply do not understand. Second, Horizon saves a tremendous amount of time and money by streamlining to GSS all of Horizon's payments

and communications concerning GSS' many patients, rather than interacting with the patients themselves.

One of the most blatant ways in which Horizon seizes advantage for itself from the assignments of benefits is Horizon's practice of deducting from the aggregated checks that it sends to GSS amounts that Horizon deems to be corrections of amounts that Horizon previously paid to GSS. For example, Horizon will make payment to GSS of the amount that Horizon believes is the correct amount that GSS should receive for services that GSS provided to a particular patient. Horizon will later conclude that it made an error in calculating the amount due to GSS, believing that it paid too much money to GSS. To correct such a purported error, the next time that Horizon sends a check to GSS in payment for services that GSS provided to multiple other patients, Horizon will deduct from the total amount of payments the amount that Horizon believes that it overpaid GSS with regard to a previous patient. See Declaration of Shannon at ¶ 17. This procedure saves Horizon time and money in a way that would be impossible absent Horizon's acceptance of the patients' assignments of benefits to GSS. If Horizon had to deal directly with each patient to recover money that Horizon overpaid to such patients, Horizon most likely would never recover such funds.

C.   **Through Its Course Of Dealings, Horizon Consented To The Assignments Of Benefits, Waived The Anti-Assignment Provision, And Is Estopped From Now Arguing That The Assignments Of Benefits Are Void**

The course of dealings described above, whereby Horizon over many years has actively capitalized upon patients' assignments of benefits to GSS, thereby bring enormous benefits to Horizon, constitutes Horizon's implied consent to those

assignments, waives Horizon's right to object to those assignments, and estops Horizon from now arguing that such assignments are void.

Courts have held that such a course of dealings between an insurer and a health care provider constitutes consent, waiver and/or estoppel that prevents the insurer from asserting that patients' assignments of benefits are void pursuant to an anti-assignment provision in the policy. A leading case that is precisely on point is Hermann Hosp. v. MEBA Med. & Benefits Plan, 959 F.2d 569 (5th Cir. 1992). In Hermann, like this case, a patient executed an assignment of benefits, whereby the patient assigned to her health care provider certain benefits under her policy, including (on the face of the assignment instrument) the right to receive directly from the insurer payments under the policy. See id. at 574. Over the course of more than three years, the health care provider "maintained continuous communication" with the insurer, "attempting to obtain periodic payments on the claim." Id. Finally, when the health care provider filed suit to recover payment on the claim, the insurer asserted the policy's anti-assignment provision as a basis for its refusal to pay. See id. The Fifth Circuit Court of Appeals held that the insurer was "estopped to assert the anti-assignment clause now because of its protracted failure to assert the clause when [the health care provider] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits." Id. at 575. Underlying the Court's holding was the Court's recognition of the reality that "[i]t had to be clear" to the insurer that the health care provider, "in admitting and providing services" to the patient, "was relying on that assignment as its entitlement to recover payment for those Plan benefits" that the health care provider furnished to the patient. Id.

In <u>Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health &
Welfare Plan</u>, 25 F.3d 616 (8th Cir. 1994), a patient assigned to his health care providers
his right to receive benefit payments from his insurer. When the health care providers
brought litigation to recover the payments, the insurer argued that the health care
providers lacked standing because the Plan documents contained an anti-assignment
provision that would render void the patient's assignment of benefits.  <u>See</u> <u>id.</u> at 618-19.
The Eighth Circuit Court of Appeals held that the assignment of benefits was valid
notwithstanding the anti-assignment provision.  <u>See</u> <u>id.</u> at 619-20. As an independent
reason for holding the anti-assignment provision inapplicable, the Court noted that the
Plan's "actual practice is not in conformity with its strict anti-assignment provision"
given that the Plan, among other things, "has paid benefits to assignees for several years"
and "pays benefits directly to health care providers." <u>Id.</u> at 619.[10]

Like the insurers in <u>Hermann</u> and <u>Lutheran</u>, here Horizon should not be allowed
to assert that its anti-assignment provision should be applied to patients' assignments of
benefits to GSS.  Over many years, Horizon actively participated in a relationship with
GSS that was premised on Horizon's tacit acceptance of patients' assignments of benefits
to GSS.  Horizon went along with those assignments of benefits, by communicating
directly with GSS (as emphasized in <u>Hermann</u>) and making payment directly to GSS (as
emphasized in <u>Lutheran</u>). Horizon readily accepted tremendous benefits to itself from
those assignments.

---

[10] <u>See</u> <u>also</u> <u>Protocare of Metro N.Y., Inc. v. Mut. Assoc. Adm'rs, Inc.</u>, 866 F.Supp. 757,
761-62 (S.D.N.Y. 1994) (Mukasey, J.) (denying defendant's motion to dismiss ERISA
claims, in which defendant argued that an anti-assignment provision rendered void a
patient's alleged assignment of benefits to a health care provider, because "[i]f the Plan
had intended to prevent all assignments" then "it would not have preserved the discretion
to pay [the health care provider] directly.")

Horizon's conduct as described herein thus constitutes Horizon's consent to the patients' assignments of benefits to GSS. In addition, Horizon's conduct constitutes a waiver of Horizon's right to object to those assignments,[11] and Horizon is estopped from now arguing that such assignments are void.[12]

## D.   Somerset Orthopedic Is Distinguishable

Horizon relies extensively on Somerset Orthopedic Assoc. v. Horizon Blue Cross Blue Shield, 345 N.J. Super. 410 (App. Div. 2001) for the broad proposition that "[a]ny assignment of benefits taken by a non-participating physician as a means of claiming direct payment from Horizon is void." Horizon Br. at 8. That statement grossly overstates

---

[11] Under New Jersey law, waiver "involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988). As GSS has alleged here, a "waiver may be established by a course of dealing quite as readily as by a more formal instrument." Lobee v. Denby Motor Truck Co., 163 N.Y.S. 951, 951 (Sup. Ct. 1917). Applying these principles to the specific context of anti-assignment clauses, New Jersey courts have held that "an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, i.e., taking no actions to invalidate the assignment vis-à-vis the assignee." Garden State Bldgs., L.P. v. First Fidelity Bank, N.A., 305 N.J. Super. 510, 524 (App. Div. 1997). Here, GSS has pled facts sufficient to establish that Horizon's course of dealing with GSS, including Horizon's failure to invalidate the assignments and Horizon's acceptance of benefits to itself from the assignments, constitute a waiver of the anti-assignment provisions of Horizon's policies.

[12] Hermann applied the doctrine of equitable estoppel to preclude the application of an anti-assignment provision in circumstances in which the insurer's course of dealings with the health care provider would have made it inequitable to apply the anti-assignment provision. See Hermann, 959 F.2d at 575 ("[w]e hold that MEBA is estopped to assert the anti-assignment clause now because of its protracted failure to assert the clause when Hermann requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits."); see also Columbia Hosp. at Med. City Dallas Subs., L.P. v. Legend Asset Mgmt. Corp., Civ. A. No. 3:03-CV-3040-G, 2004 U.S. Dist. LEXIS 14890 at *12 n.5 (D. Tex. April 9, 2004) (denying a motion to dismiss in a case in which a health care provider sought direct payment from an insurance company pursuant to an assignment of benefits because the health care provider had "pleaded facts sufficient to support its claim that [the insurer] is estopped from enforcing any anti-assignment provision that might exist in the Plan").

the scope of the decision in <u>Somerset Orthopedic</u>.  The holding of <u>Somerset Orthopedic</u> is that nothing on the face of Horizon's anti-assignment provision precludes its enforcement as a matter of New Jersey law or public policy. <u>Somerset Orthopedic</u> is clearly distinguishable from this case because here, GSS raises *factual issues* of consent, waiver and estoppel that go beyond the face of the anti-assignment provision and require that the anti-assignment provision not be enforced as a result of Horizon's own course of conduct. Such issues of consent, waiver and estoppel were not present in <u>Somerset Orthopedic</u>.

<u>Somerset Orthopedic</u> involved a physician who, like GSS, was not a participant in Horizon's network. <u>See</u> <u>Somerset Orthopedic</u>, 345 N.J. Super. at 414-415.  The physician in <u>Somerset Orthopedic</u> received assignments of benefits from his patients, under which the patients purported to assign to the physician their right to receive payments directly from Horizon.  <u>See</u> <u>id.</u> at 415. Horizon, "relying on the anti-assignment clause in its subscriber contracts, refuse[d] to pay plaintiffs directly," instead sending payment directly to the patient.  <u>Id.</u> The physician, desiring to be paid directly by Horizon, brought an action for a declaratory judgment against Horizon, arguing that enforcement of the anti-assignment clause would be contrary to the law of assignment of New Jersey.  <u>See</u> <u>id.</u>  The Appellate Division ruled that under the circumstances of <u>Somerset Orthopedic</u>, the anti-assignment clause would be enforced.  <u>See</u> <u>id.</u> at 415-23.

This case presents facts completely different than those of <u>Somerset Orthopedic</u>. In <u>Somerset Orthopedic</u>, Horizon at all times *refused* to make payment to the physician, asserting that the purported assignment of benefits was void under the anti-assignment provision.  <u>See</u> <u>id.</u> at 415.  In this case, Horizon at all times has interacted with GSS *as if the assignment were effective*, accepting claim forms from GSS, communicating with

GSS about the claims, and making payment on those claims directly to GSS.   The physician in <u>Somerset Orthopedic</u>, who had never received any payments from Horizon, asked the court to require Horizon to make payments to the physician, rather than to the patients as Horizon had been doing.   Here, GSS, which has for years been receiving payments from Horizon on claims that GSS has submitted to Horizon pursuant to patients' assignment of benefits, is disputing the calculation and amount of the payments that Horizon has already made to GSS, pursuant to N.J.A.C. 11:21-7.13.

In this case, Horizon's long course of dealing with GSS, in which Horizon at all times conducted itself as if the patients' assignments of benefits were effective (including making payments directly to GSS), leads to the inescapable conclusion that Horizon consented to those assignments, or else waived its right to object to them or is estopped from now arguing that they are void.   In <u>Somerset Orthopedic</u>, on the other hand, Horizon clearly had not consented to the assignments and clearly had not waived its right to assert the anti-assignment provision, because Horizon had all along refused to make direct payment to the physician.[13]

**E.**      **Horizon's Consent, Waiver And Estoppel Are Disputed Questions of Fact**

The Court must deny Horizon's motion because the questions that this case presents – whether Horizon consented to the patients' assignments of benefits to GSS, whether

---

[13] Horizon's reliance on <u>Briglia v. Horizon Healthcare Servs., Inc.</u>, 2205 WL 1140687 (D.N.J. May 13, 2005) is similarly misplaced. <u>See</u> Def. Br. at 8-9.  In <u>Briglia</u>, like in <u>Somerset Orthopedic</u>, Horizon refused to make payments directly to the health care provider, despite the fact that the health care provider had received assignments of benefits from patients.  The court ruled that Horizon could refuse to make payments directly to the health care provider, because such assignments were void under the anti-assignment provision of the policy.  In the present case, unlike <u>Briglia</u>, Horizon has been making payments directly to GSS for years, and thus has consented to the assignments, or has waived the anti-assignment provision or is estopped from asserting it now.

Horizon waived the protections of the anti-assignment provisions, and whether Horizon is estopped from now asserting the anti-assignment provisions – are disputed questions of fact that cannot be decided on a motion to dismiss or a motion for summary judgment. Each of the three legal theories underlying GSS' argument that the anti-assignment provision should not apply – consent, waiver and estoppel – turns on Horizon's intent as it engaged in its course of dealings with GSS.  Specifically in the context of an anti-assignment clause, New Jersey courts have held that the waiver of an anti-assignment clause "is basically a question of intention, and usually a matter for the trier of fact." Garden State Bldgs., L.P. v. First Fidelity Bank, N.A., 305 N.J. Super. 510, 524 (App. Div. 1997).[14]  Similarly, whether a court will apply the doctrine of equitable estoppel to preclude the application of an anti-assignment provision is also a question of fact that cannot be decided on a motion to dismiss.  See Columbia Hosp. at Med. City Dallas Subs., L.P. v. Legend Asset Mgmt. Corp., Civ. A. No. 3:03-CV-3040-G, 2004 U.S. Dist. LEXIS 14890 at *12 n.5 (D. Tex. April 9, 2004) (denying a motion to dismiss in a case in which a health care provider sought direct payment from an insurance company pursuant to an assignment of benefits, because the health care provider had "pleaded facts sufficient to support its claim that [the insurer] is estopped from enforcing any anti-assignment provision that might exist in the Plan.")  The Court should deny defendant's

---

[14] See also Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988) ("Questions of waiver, therefore, are usually questions of intent, which are factual determinations that should not be made on a motion for summary judgment"); Gillman v. Waters, McPherson, McNeill, P.C., 271 F.3d 131, 139-40 (3rd Cir. 2001) (holding that "a grant of summary judgment on the issue of waiver was inappropriate" on a record in which the parties disputed facts concerning the intent of the party alleged to have made the waiver).

motion so that GSS can pursue discovery as to the disputed facts concerning Horizon's consent, waiver and/or estoppel with regard to patients' assignments of benefits.[15]

## VI.  GSS HAS STANDING AS A THIRD-PARTY BENEFICIARY OF CONTRACTS BETWEEN HORIZON AND SUBSCRIBERS

GSS, as a third-party beneficiary of the agreements between Horizon and its subscribers, has standing to bring this action.  The test to determine whether an entity is a third-party beneficiary is "whether the contracting parties intended that a third-party should receive a benefit which might be enforced in the courts." Strulowitz v. Provident Life & Casualty Ins. Co., 357 N.J. Super. 454, 459 (App. Div. 2003); Rieder Communities, Inc. v. N. Brunswick, 227 N.J. Super. 214, 222 (App. Div.), certif. denied, 113 N.J. 638 (1988) (quoting Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 77 (E. & A.1940)); see also N.J.S.A. 2A:15-2 (a person for whose benefit a contract is made may sue on it in any court). "The contractual intent to recognize a right to performance in the third person is the key." Broadway Maint. Corp. v. Rutgers, The State Univ., 90 N.J. 253, 259 (1982). To gain third-party beneficiary status, it is not necessary that an intended beneficiary be identified when the contract is made.  Werrmann v. Aratusa, Ltd., 266 N.J. Super. 471, 476 (App. Div. 1993); see Restatement (Second) of Contracts § 308 (1981).

Here, it clear that under its contracts with subscribers, Horizon intended that GSS should receive both a benefit and a right to performance. Horizon has entered into many different subscriber health benefits contracts. For example, defendant Horizon attaches

---

[15] GSS, as the patients' assignee, also has standing to sue pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides that a participant or beneficiary of an employment benefit plan may initiate civil proceedings to recover benefits under the plan, and which allows derivative standing based on an assignment of rights.  See, e.g., HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001).

three different contracts to the certification of Robert A. Marino.  See Marino Cert. Exhs. A-C.  These contracts set forth, among many other things, the arrangement between Horizon and the subscriber, and the intended benefits to be received by third parties such as GSS.  All three Horizon contracts attached as Exhibits A-C to the Marino Certification clearly set forth Horizon's intention to confer a benefit upon a "Provider" such as GSS.

First, the terms of the plans actually contemplate and allow "Providers" such as GSS to collect and receive payments directly from Horizon.  The contract states: "Horizon BCBSNJ may determine to pay benefits to a Provider if it chooses to do so." Marino Cert. Ex. A at 32; Ex. B at 32; Ex. C at 35.  Pursuant to its contract, and over a period of many years, Horizon has actually paid GSS directly for services provided to subscribers.  Horizon's affirmative act of making payments directly to GSS pursuant to Horizon's contracts with its subscribers demonstrates that Horizon, in making those contracts, not only intended to confer a benefit upon GSS, but also in fact did confer that benefit. Further, by paying GSS directly, Horizon clearly "recognize[d] a right to performance" in GSS.  Broadway Maint., 90 N.J. at 259.

Second, the terms of the plan specifically authorize a provider such as GSS to appeal any determination by Horizon including, but not limited to, issues involving benefits and insufficient payments. The plan states:

> A Covered Person (or a Provider acting on behalf of the Covered Person and with the Covered Person's consent) may appeal administrative and utilization management determinations. Administrative determinations involve benefit issues. Utilization management determinations involve a denial, termination or other limitation of covered health care services.

Marino Cert. Ex. A, at 33; Ex. B at 33; Ex. C at 36. In other words, Horizon specifically

conferred a benefit – the right to prosecute appeals on behalf subscribers – upon

providers such as GSS.

In addition, replete throughout all three of the plan contracts that are attached to

Mr. Marino's certification is additional language that demonstrates GSS' status as an

intended third-party beneficiary of those contracts:

- "A Covered Person (*or* a Provider acting on behalf of the Covered Person and with the Covered Person's consent)" (emphasis added). Marino Cert. Ex. A at 33, 34; Ex. B at 33, 34; Ex. C at 36, 37.

- "Horizon BCBSNJ will provide the Covered Person *and/or* the Provider written notification . . ." (emphasis added). Marino Cert. Ex. A at 34; Ex. B at 34; Ex. C at 37.

- "To initiate an External Appeal, the Covered Person *or* Provider . . ." (emphasis added). Marino Cert. Ex. A at 35; Ex. B at 34; Ex. C at 38.

- "The covered Person *or* Provider shall submit the request on the required forms . . ." (emphasis added). Marino Cert. Ex. A at 35; Ex. B at 34; Ex. C at 38.

- "Upon completion of this review, the IURO will immediately notify the Covered Person *or* Provider who filed the appeal . . ." (emphasis added). Marino Cert. Ex. A at 35; Ex. B at 35; Ex. C at 38.

- "[T]he IURO shall provide written notice to the Covered Person *or* Provider who filed the appeal . . ." (emphasis added). Marino Cert. Ex. A at 36; Ex. B at 35; Ex. C at 39.

The above contractual terms reflect Horizon's intent to confer benefits and

privileges to providers such as GSS. Horizon's attempt to distance itself from its own

contracts must not be entertained. GSS is a third-party beneficiary under Horizon's

subscriber agreements and thus has standing to sue.

At a minimum, discovery and a hearing are needed to determine whether GSS is a third-party beneficiary under Horizon's subscriber agreements. GSS is entitled to discovery to probe all the issues surrounding the intent of the parties, language of the contracts between Horizon and its subscribers and Horizon's actions in making direct payment to providers such as GSS. Further, there are sufficient disputed facts in the record, which may be determinative of GSS' status as a third-party beneficiary under the Horizon/subscriber agreements, that can be resolved only upon a hearing. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552-553 (1999).

## VII. NUMEROUS DISPUTED QUESTIONS OF FACT PRECLUDE GRANTING <u>HORIZON'S MOTION FOR SUMMARY JUDGMENT</u>

The record at this early stage of the litigation contains numerous disputed questions of fact that preclude granting Horizon's motion for summary judgment. Discovery is needed to address many of the arguments that Horizon has put forth in its motion papers. In particular, GSS is entitled to depositions, written discovery, and third-party discovery concerning:

- What data or methodology Horizon uses to determine the amounts of the payments that Horizon makes directly to GSS;

- Whether data was provided by any subsidiary or affiliate of Ingenix to Horizon and whether Horizon based its reimbursement rates for non-participating providers like GSS on this data;

- Horizon's treatment of other ambulatory surgical centers regarding, among other things, making direct payments to out of network providers;

- GSS' status under N.J.A.C. 11:20-3.1(e) and 11:21-7.13(a);

28

- Why the payments that Horizon makes to GSS significantly decreased as of October, 2004.

- The relationship, financial and otherwise, between Ingenix and Horizon;

- Horizon's decision to make payments directly to GSS;

- The terms of every health benefits contract between Horizon and Horizon's subscribers; and

- The language of the anti-assignment provisions in all of the health benefits contracts between Horizon and Horizon's subscribers.

Summary judgment should be denied while discovery is ongoing. <u>Sames v. Gable</u>, 732 F. 2d 49, 51-52 (3d Cir. 1984)("[I]t was error for the district court to grant defendants' motion for summary judgment while pertinent discovery requests were outstanding."). Here, plaintiffs have not even begun discovery on the disputed issues of material fact. As such, defendant's motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Horizon's motion to dismiss, or in the alternative, for summary judgment and grant plaintiffs' cross-motion for partial summary judgment.

Dated: April 10, 2006

Respectfully submitted,

By:_____
       Bruce H. Nagel (BN 6765)
       Robert H. Solomon (RHS 4158)
NAGEL RICE & MAZIE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

(973) 618-9194 (fax)

Neil L. Prupis (NP 5500)
Thomas A. Gentile (TG 6939)
LAMPF LIPKIND PRUPIS & PETIGROW
80 Main Street
West Orange, New Jersey 07052
(973) 325-2100
(973) 325-2839 (fax)

*Attorneys for Plaintiffs*

30