<pre>
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
 2

 3   GREGORY SURGICAL SERVICES,        .
     LLC,                              .
 4                                     .
          Plaintiff,                   .  Case No. 06-cv-00462
 5                                     .
     vs.                               .  Newark, New Jersey
 6                                     .  July 15, 2011
     HORIZON BLUE CROSS BLUE           .
 7   SHIELD OF NEW JERSEY, INC.,       .
                                       .
 8        Defendant.                   .

 9

10                        TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE MADELINE COX ARLEO
11                  UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13
     For the Class          BRUCE HELLER NAGEL, ESQ.
14   Plaintiffs:            Nagel Rice, LLP
                            103 Eisenhower Parkway
15                          Suite 201
                            Roseland, NJ 07068
16                          (973) 618-0400
                            Email: Bnagel@nagelrice.com
17
                            NEIL L. PRUPIS, ESQ.
18                          Lampf, Lipkind, Prupis & Petigrow
                            80 Main Street
19                          West Orange, NJ 07052
                            (973) 325-2100
20                          Email: Prupis@llpplaw.com

21

22

23

24

25
</pre>

```
 1   For the Defendant:        B. JOHN PENDLETON, JR., ESQ.
                               DLA Piper LLP (US)
 2                             300 Campus Drive
                               Suite 100
 3                             Florham Park, NJ 07932
                               (973) 520-2561
 4                             Email: John.Pendleton@dlapiper.com

 5                             EDWARD S. WARDELL, ESQ.
                               Kelley, Wardell, Craig, Annin &
 6                             Baxter, LLP
                               41 Grove Street
 7                             Haddonfield, NJ 08033
                               (856) 795-2220
 8                             Email: Ewardell@kwclawyers.com

 9   Audio Operator:

10   Transcription Service:        KING TRANSCRIPTION SERVICES
                                   65 Willowbrook Boulevard
11                                 Wayne, New Jersey 07470
                                   (973) 237-6080

12

13   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
14

15

16

17

18

19

20

21

22

23

24

25
```

 1            (Commencement of proceedings at 11:27 a.m.)

 2

 3            THE COURT:  Could I have appearances, please?

 4            MR. NAGEL:  For the plaintiffs, Bruce Nagel, Nagel

 5   Rice; and Neil Prupis, Lampf, Lipkind, Prupis & Petigrow.

 6            THE COURT:  Straight from -- straight from Spain, I

 7   understand.

 8            MR. NAGEL:  Not exactly today, but I was there last

 9   week.

10            THE COURT:  Excellent.  Okay.

11            Mr. Prupis, good to see you.

12            Okay.  Who do we have for the defendants?

13            MR. PENDLETON:  John Pendleton from DLA Piper,

14   Your Honor, good morning.

15            THE COURT:  Okay.  Good morning.

16            MR. WARDELL:  And Edward S. Wardell from Kelley,

17   Wardell, Craig, Annin & Baxter.

18            THE COURT:  Okay.  Your clients are here, I take

19   it?  Both sides?

20            MR. PENDLETON:  Yes, Your Honor.

21            THE COURT:  Has a settlement been reached with the

22   Glen Ridge folks?

23            MR. PENDLETON:  Yes, Your Honor.

24            THE COURT:  Has the settlement agreement been

25   signed, Mr. Prupis?

 1          MR. PRUPIS:  The settlement agreement is signed.

 2          THE COURT:  Okay.

 3          MR. PRUPIS:  There's only one open issue.

 4          THE COURT:  What's the one open issue?

 5          MR. NAGEL:  Well, the open issue is the fact that

 6   the settlement agreement is signed does not answer the

 7   question as to whether there's a dismissal or the Court will

 8   dismiss the case.

 9          THE COURT:  Well, I understand that.  And that's

10   going to be -- that'll be something I'll take under

11   advisement when I get all the briefs.  I'm not going to do

12   anything today.  I know you filed a motion to amend.  I'm

13   going to ask Mr. Pendleton if he can get me the opposition

14   sometime sooner than later, not in a regular motion cycle.

15   It would be helpful if I could have it, like, a week from

16   Monday.

17          MR. PENDLETON:  You can it a week from Monday,

18   Judge.  That'd be fine.

19          THE COURT:  And I'll take -- and then you can do

20   the reply following week, Mr. Nagel.  And I'll take

21   everything under advisement.  I'm not going to -- I don't

22   think I need oral argument before I read all briefs.  The

23   motion -- I'm not going to enter a dismissal order yet, but

24   I'm going to read everything, and I'm going to read your

25   motion to amend papers and I'll read the opposition and I'll

1    decide -- clearly if the motion to amend is disallowed, then

2    the case is closed.  If the motion to amend is allowed, then

3    a dismissal order will not be entered, so they're connected.

4              MR. NAGEL:  I agree they're connected.  As long as

5    Your Honor holds that and I appreciate that.

6              The other issue that Your Honor must be aware of is

7    that under ERISA we have claim for attorneys' fees, both in

8    relation to this settlement and the Wayne Surgical settlement

9    that we were advised has just been finalized as in a couple

10   days ago.  So for -- to the extent that your -- either

11   Your Honor or Judge Linares has got to hear the ERISA

12   application for fees, the case needs to be -- remain --

13   remain open as well.  And we will submit a supplemental

14   letter brief on that issue.

15             THE COURT:  I thought that the fees were part of

16   the settlement.

17             MR. PENDLETON:  Your Honor, I believe that the

18   obligation to pay the fees would be Glen Ridge and Wayne's.

19   And Mr. Prupis and Mr. Nagel have asserted liens as to the

20   Wayne settlement proceeds that will be paid to Wayne, and

21   they need to work out with their client, their former client,

22   Wayne Surgical, what portion of the settlement amount is --

23   are their piece.  But they're --

24             THE COURT:  So let me understand this.  The

25   settlement that was reached in this case was for a lump sum

1   inclusive of fees or exclusive of fees?

2           MR. PENDLETON:  No, inclusive of fees.

3           MR. NAGEL:  It doesn't say that.

4           THE COURT:  Okay.  Well, that needs -- that's a key

5   term.  If it's inclusive of fees -- if there's a judgment in

6   an ERISA case after a jury trial, like any other fee-shifting

7   case, then there's a separate application for fees.

8           If there's a settlement, the settlement has to be

9   clear whether it's inclusive or exclusive of fees.  It's that

10  simple.

11          MR. PENDLETON:  Your Honor --

12          THE COURT:  It can't be silent.  It has to say it.

13  If it's inclusive, then it turns on the relationship between

14  the lawyer and the client for the plaintiff.  If it's not

15  inclusive, then you make a separate application for fees.

16  But it will be governed by the settlement agreement.

17          MR. PENDLETON:  Your Honor, the settlement

18  agreement I passed up to your clerk earlier, which I hope you

19  have a copy in front of you.

20          THE COURT:  I do.

21          MR. PENDLETON:  Signed by Glen Ridge Surgicenter

22  indicates on the first page in the last --

23          THE COURT:  Hold on.  Let me get it.  Let me get a

24  copy.  The one that's signed that was signed on the 14th,

25  which was yesterday.

 1              MR. PENDLETON:  Yes, Judge.

 2              THE COURT:  And there's an amendment to the

 3    ancillary service provider agreement too.  An amend- -- I got

 4    the amendments.  But the --

 5              MR. PENDLETON:  On the very first page, it

 6    indicates that the claims are being dismissed.

 7              THE COURT:  Which paragraph?

 8              MR. PENDLETON:  The last "whereas" paragraph on the

 9    first page of the confidential settlement agreement and

10    mutual general release.

11              MR. NAGEL:  It says there's a "whereas" clause, but

12    it is our view under ERISA law that can -- our claim, the

13    lawyers' claim, cannot be waived.  And we'll brief that,

14    Judge.

15              THE COURT:  Well, I want to know what the

16    understanding of the client is, because they're -- they can

17    be waived.  ERISA cases settle all the time.  If the client

18    accepts -- there's a client, and if the client says I'll

19    accept this settlement, I understand that it's inclusive of

20    fees, and I have a separate fee agreement with my attorney,

21    then you have no right.  If it explicitly says it includes

22    fees, this -- this amount that we're paying is inclusive of

23    fees, you don't have a statutory right.

24              MR. NAGEL:  I -- Judge, I believe --

25              THE COURT:  So it really turns on the understanding

1   of parties, what the meeting of the minds is of the parties

2   on the issue of fees.

3            MR. NAGEL:  I'd like to brief that.  I believe --

4            THE COURT:  Well, I'd like to have your client take

5   the stand right now, if it's okay, and und- -- there's a --

6   there's clearly a disconnect between the two parties right

7   now about fees.  If his understanding is it does include

8   fees, then you have an uphill battle convincing any court

9   that you should have a separate agreement, a separate

10  application for fees.  If he says "I'm not sure" or "I don't

11  know" or "it does not," then that's something very different.

12           But settlements are independent mechanisms for

13  parties to resolve differences.  There are ERISA cases

14  settled every day in this Court where they are inclusive of

15  fees, and the parties have that expectation when they settle.

16  There's other cases where they -- they say we'll carve out

17  the fees and let the Court decide it.

18           But it really depends on what the meeting of the

19  minds as to settlement.  If the parties' agreement is we --

20  we agree that this was everything, including fees, you can't

21  make a motion for fees after that if it's inconsistent with

22  the ruling [*sic*] of the parties.

23           So what I'd like -- so I'm not -- I'm not hearing a

24  motion on fees unless we make a resolution today as to what

25  the intent of the parties are.  Mr. Pendleton has made a

1    representation that his understanding that it's inclus- -- it

2    is inclusive of fees.

3          MR. NAGEL:  Judge, can I suggest two things.

4    Number one, I was not prepared -- quite frankly, today is my

5    anniversary, I wasn't even supposed to be here.  I would like

6    the opportunity to review this issue with the client.  Apart

7    from my understanding that the client cannot waive our claim

8    to fees, that's been my understanding, Your Honor obviously

9    has a different view.  I'd like to brief it.  And before --

10         THE COURT:  I want -- I think -- Mr. --

11         MR. NAGEL:  Before there's any hearing, Judge, I

12   would like the opportunity to brief the law and talk to my

13   client about this issue.

14         THE COURT:  You can talk to your client in 10

15   minutes.  Mr. Nagel, we're having -- I asked -- I did it -- I

16   had a conference call with everyone three days ago, and I

17   said I want -- I want to have this -- there's a settlement or

18   there isn't a settlement.  It's not that complicated.  I sent

19   a text order two days ago, and I said, if a settlement is not

20   reached, we're going to have a hearing today, and you're

21   going to have your clients present.  That is unambiguous.

22         You have your clients here.  There's a disconnect

23   on the issue of fees.  I'll give you a short break to talk to

24   your client.  But I want to hear from both sides.  This is a

25   hearing.  And I want to find out what the expectation is in

 1   the -- whether there's an agreement as to fees.  Because if

 2   your client says it doesn't include fees and Mr. Pendleton's

 3   client says it does include fees, then we're -- then we're at

 4   an impasse.  We don't have a settlement of this case.  And

 5   then we have to decide whether or not there's a motion to

 6   enforce the settlement or not, whether there's a meeting of

 7   the minds.  That's the step.

 8           But it's not that complicated.  If they both agree

 9   it included fees, then we have a settlement.  If they -- if

10   one side says it does and one side says it doesn't, then we

11   have a problem, because this case has gone on for four years,

12   and if at the end of the day, there's a fee application for a

13   million dollars, I am sure that defendants are going to say,

14   plaintiff, rather -- defendants, rather, are going to say,

15   there's no settlement because we didn't expect to have to pay

16   a huge amount of fees on top of this.  If the expectation --

17   it's a very simple question.  You've negotiated this for

18   weeks now.  Does it include fees or does it not include fees?

19   That's all.

20           MR. NAGEL:  We didn't -- we, as lawyers, didn't

21   negotiate anything.  This was -- again, as we certified, this

22   was given to the client.  The draft was given without our

23   review.  And it was handed to us.  This was done behind our

24   back.  And Your Honor says, well, you're in it now, so you

25   could cure whatever defect.  So we didn't negotiate the fees,

1    and we're not in a position to do it.

2              Now, obviously, obviously, I'd like to put counsel

3    on the stand.  If we're going to have a hearing on the

4    expectation of the parties, let the lawyers and Ms. Sherry

5    was here, let her testify as to what --

6              THE COURT:  Mr. Nagel --

7              MR. NAGEL:  -- what she did as well.

8              THE COURT:  -- in my courtroom I decide who

9    testifies.  I wanted the clients here for a reason.  It's a

10   very simple, uncomplicated issue.  I want to know if there's

11   a settlement, if there's a meeting of the minds of the

12   parties on the issue of fees.  That's it.  Nothing more

13   complicated than that.  So we're not going put law- -- we're

14   going to put clients on the stand today, and we're going to

15   say "What is your expectation?"  That's it.  If there's no

16   meeting of the mind -- I'd like to hear from Mr. Pendleton,

17   if the meeting -- if the position is it does not include

18   fees, what is your client's position as to settlement?

19             MR. PENDLETON:  There is none.

20             THE COURT:  There is none.  So let's find out what

21   it is.  If there's none, then we keep going forward.  It's

22   very simple.  His -- his position is if it's fees, there's no

23   settlement.  If your client says it does not include -- it

24   does [*sic*] include fees and Mr. Pendleton's client says it

25   does, absolutely does include fees, then we don't have a

1    settlement, and we go forward.

2            But that's something that we need to -- that is not

3    something that is -- it's one question to both clients.

4    That's it.

5            MR. NAGEL:  And -- so --

6            THE COURT:  So you can either represent to me

7    that -- you could talk to your client and you could say

8    whether it does or it doesn't, and Mr. Pendleton could talk

9    to his client and report back to me.  But it's not -- it

10   really turns on the intent of the parties, not the intent of

11   the lawyers.  It's the intent of the parties.

12           MR. NAGEL:  And as I understand it, Your Honor is

13   not going to allow me to put a record in in terms of the

14   lawyers that were involved in negotiating the deal?

15           MR. PENDLETON:  Your Honor --

16           THE COURT:  No, I'm going to ask this.  I want

17   you -- I'm giving you a break.  I want you to talk to your

18   client and come back and make a proffer to me as to whether

19   there's a meeting -- because there's a settlement agreement

20   here that's signed, and it says on it, "Whereas the parties

21   are desirous of resolving any and all claims, disputes among

22   them, which relate to the reimbursements paid by Horizon for

23   services and supplies provided by GSS, including any claims

24   which were raised or could have been raised in this action

25   against GSS, against Horizon, together with claims for

1   attorneys' fees or costs, and have agreed to implement an

2   agreement governing these future relations."

3            So the "whereas" paragraph suggests pretty clearly

4   that this is an attempt to resolve everything, including

5   attorneys' fees.

6            So I need a very simple question from your client.

7   The -- it's a -- it's a four -- it's a six- -- five-page

8   agreement.  Actually it's a three-page agreement.  The fourth

9   and fifth pages are signature line.  It says that -- the gist

10  of the settlement agreement is Horizon shall pay to GSS the

11  sum of $112,000, and the parties have entered into

12  participating provider agreement.  They've entered into an

13  agreement.  They've agreed to pay the claims and that there's

14  a mutual release and dismissal.

15           So the -- it's not a complicated agreement.  It's a

16  very simple agreement.

17           And the only issue is does that $112,000 include

18  attorneys' fees.  It turns on the intent of the parties.

19  That's it.

20           So you talk to your client and you talk to your

21  client, and you come back and make a proffer to me.  If you

22  say to me, it does -- I've talked to my client, it does not

23  include fees, then the answer is -- and Mr. Pendleton comes

24  back and says it does include fees, I guess we don't have a

25  settlement.

1            MR. NAGEL:  Well, but I think Your Honor also is

2     side-stepping the argument I made earlier.  I'm under the

3     impression -- and potentially I'm wrong legally -- but I'm

4     under the impression that a ERISA application for fees cannot

5     be waived by a client.

6            THE COURT:  Well, I'm not under that impression.

7            MR. NAGEL:  Okay.

8            THE COURT:  And despite whatever law you may cite

9     to me, it is a fundamental premise of contract law and

10    settlements that the parties can resolve disputes, they're

11    represented by counsel, they're sophisticated, you signed a

12    settlement agreement.  Does it include fees or does it not

13    include fees?

14            It's incredibly important because frankly the fees

15    well trump the $112,000 that are here.  So if you say to me,

16    I think my client was under the expectation that I can make a

17    separate motion for fees and that Horizon would be obligated

18    to pay fees above and beyond this $112,000, then -- and at

19    the same time Horizon says, that is not what I intended, we

20    don't even get to the issue of whether or not you can or

21    can't make an application for fees, there's no meeting of the

22    minds.  It's in every fee-shifting case.  You either include

23    it or you don't include it.  If -- if there's no meeting of

24    the minds on it, then there's no settlement.  It's that

25    simple.  It's that simple.

1            MR. NAGEL:  I have Your Honor's direction.  I will

2    do that --

3            THE COURT:  You can't -- because what you can't do,

4    Mr. Nagel, is say -- let me finish.  What you can't do is

5    say, this is -- we think it means X and they think it means

6    Y, so we're going to then have -- I'm going to make a motion

7    for fees, and then we'll have a hearing on it, because that

8    hearing is going to turn on what was -- was there a meeting

9    of the minds on the issue of fees.  If there wasn't a meeting

10   of the minds, there's no settlement.

11           So that's what -- before we get to having a

12   settlement and then having you make a fee application and

13   then having to resolve the same issue, I want it resolved

14   today:  Is there a meeting of the minds on fees?  If there is

15   not a meeting of the minds, we don't have a settlement.  It's

16   that simple.

17           MR. NAGEL:  Judge, I will follow that instruction.

18   I will --

19           THE COURT:  Okay.  I'll be back in 5.  Thank you.

20           MR. NAGEL:  Before Your Honor breaks, can I raise

21   one other issue?

22           THE COURT:  No.  We'll come back when -- when I'm

23   ready.  Take -- I want you talk to your clients, and we'll

24   come back.

25              (Recess:  11:41 a.m. to 12:09 p.m.)

 1            THE COURT:  Okay, gentlemen, when we broke --
 2   before we broke, we were -- I was trying to ascertain whether
 3   there was a settlement in the case.  And the issue is pretty
 4   simple.  It is whether the settlement that's agreed to, core
 5   terms being a participating provider agreement, payment of
 6   $112,000, mutual release, and dismissal of this action --
 7   Glen Ridge's claims in this action, also -- is also includes
 8   attorneys' fees.  Specifically whether the payment of 112
 9   includes attorneys' fees.
10            I asked you to meet with your clients separately
11   and to report to the Court whether or not that core term had
12   been agreed to.
13            MR. NAGEL:  There was discussion about attorneys'
14   fees, so we will not press it from the client's point of
15   view.  We're reserving the right to confirm whether I'm right
16   or wrong on the law, that it may or may not be waivable.
17            THE COURT:  Let me -- let me stop you --
18            Okay.  I had a very simple question.
19            MR. NAGEL:  Yes.
20            THE COURT:  And the issue -- the question is I want
21   to understand whether there was a meeting of the minds on the
22   core terms of the agreement.  Settled New Jersey law.
23   Settled law everywhere.
24            MR. NAGEL:  The answer is yes.
25            THE COURT:  And the answer -- let me just finish.

1               And the issue is if the expectation of your client

2    in the settlement agreement was to -- that it did include

3    fees or didn't include fees would be a key term because it

4    would far exceed what the payment of 112 is.  Is 112 -- is

5    your client's understanding that it did include or didn't

6    include fees, because that's what it's going to turn on.

7               MR. NAGEL:  It did, but that doesn't bear on the

8    legal issue as to --

9               THE COURT:  Okay.  So that's my answer.  So --

10              MR. NAGEL:  Yes.

11              THE COURT:  -- your client's expectation is that

12   the 112 was inclusive of fees.

13              MR. NAGEL:  It did, but it did not -- it did not

14   deal with the legal issue that I'm reserving on.  It may not

15   be a legal issue after I verify the law.

16              MR. PENDLETON:  Your Honor, I just want to be very

17   clear on behalf of Horizon, and I don't want to mince words.

18   I've kept my mouth shut for a lot of stuff that's been said

19   about the negotiations here that is untrue.

20              This is the fact:  If $112,000 is not the sum total

21   that Horizon is to pay to settle the Glen Ridge case, then

22   there's no deal.  If Mr. Prupis and Mr. Nagel want to make a

23   claim for counsel fees, there's no deal, there's no

24   participating agreement, we're done, we're back in litigation

25   and we'll proceed.  We've made that clear to Mr. Prupis and

 1  Mr. Nagel throughout.

 2          So the answer is either we have a deal and it's

 3  112,000 and par [phonetic] agreements or we have no deal.

 4  That's it.

 5          MR. NAGEL:  I have no idea what Mr. Pendleton's

 6  referring since he never negotiated any of this with either

 7  Mr. Prupis or I, never made anything clear.  This was all

 8  done through the back channels, as I put in the papers.

 9          There is a settlement agreement reached by the

10  clients.  I'm simply reserving on a legal issue that I may or

11  may not be right on.

12          THE COURT:  Let me -- let me just give you a little

13  advice and heads-up where I'm headed.  If you're -- if your

14  position today is my client's understanding and expectation

15  was that the 112 included fees, then I would be disinclined

16  to entertain any application for attorneys' fees.  I want you

17  to know that your client's in the courtroom today, I want it

18  to be loud and clear.

19          MR. NAGEL:  I understand.

20          THE COURT:  Because that -- that is what

21  settlements are about.  Clients negotiate.  There's some

22  cases where the clients agree, this is the amount and we'll

23  let the court decide the amount of fees.  That happens in

24  civil rights case.  It happens in employment cases.  It

25  happens in ERISA cases.

 1          There's other cases where there's fee shifting

 2     where the parties agree that it includes fees.

 3          So I want you to know that it is not my

 4     understanding of the law that you can make an application for

 5     fees when there's a meeting of the minds of the parties that

 6     the 112 includes fees.  And it really turns on the parties.

 7     It doesn't turn on the lawyers.  It turns on the

 8     understanding and expectation of the parties.  You've just

 9     represented to the Court -- correct me if I'm wrong -- that

10     it's your par- -- your client's expectation that the 112 was

11     inclusive of fees.  Is that correct?

12          MR. NAGEL:  I did represent that.

13          THE COURT:  Okay.  So I will report to

14     Judge Linares that there is a signed settlement agreement,

15     that it was the clients' expectations, both the plaintiff and

16     the defendant, that it was inclusive of fees.

17          I -- I know that there's a motion to amend pending.

18     I will take that under advisement.  There'll be no order of

19     dismissal entered until this motion is decided.  I'm not

20     certain whether I will handle it or Judge Linares will handle

21     it.  I'm not certain whether either of us will request oral

22     argument.  So I will give you a full and fair opportunity to

23     file opposition and reply briefs and put before me anything

24     that you feel is necessary with respect to your motion.

25          So today is the 15th.  Mr. Pendleton, could you

 1   have your opposition by July 25th?

 2           MR. PENDLETON:  Yes, Your Honor.

 3           THE COURT:  Okay.  And Mr. -- Mr. Prupis,

 4   Mr. Nagel, would it be possible to have the following Monday

 5   your -- which would be August 1st, to have your reply brief?

 6           MR. NAGEL:  We will.

 7           THE COURT:  Okay.  And I'll try to get this done as

 8   quickly as possible.  After I get all the briefs in, I'll let

 9   you know whether there'll be oral argument or whether

10   Judge Linares will be handling it.

11           Okay?  Anything further?

12           MR. NAGEL:  Yes, Judge.

13           MR. PENDLETON:  Your --

14           THE COURT:  Yes.

15           MR. WARDELL:  Your Honor, just so I'm clear, when

16   we say the agreement was inclusive of fees and we meant that

17   the release means they release any claim they had for

18   attorneys' fees under ERISA or any other statute.

19           THE COURT:  That's my understanding.

20           MR. WARDELL:  Thank you.

21           THE COURT:  Yes, Mr. Nagel.

22           MR. NAGEL:  Yes, Judge.  Your Honor is aware that

23   the last time we were in court, there was an issue with

24   regard to Mr. Pendleton's application to in effect dismiss

25   the action.  Your Honor ruled against it and permitted us

1   leave to file an amended complaint.

2            THE COURT:  I didn't rule against anything,

3   Mr. Nagel.  The record both times will speak for itself.  I

4   said out of an abundance of caution, since I wasn't clear on

5   Wednesday whether the parties had a meeting of the minds on

6   the settlement of this case, I would hold it in abeyance

7   until Wednesday.  The briefing that I got up to Wednesday did

8   not indicate that you had a new class representative waiting

9   to serve as class representative.  Your briefing up to that

10  point said you may have one.  I said, if you a motion to

11  file, file it in accordance with the rules of civil

12  procedure.  I will take everything under advisement in

13  accordance with the rules of civil procedure.

14           MR. NAGEL:  I was addressing a different issue,

15  Judge.

16           THE COURT:  Okay.  What's your issue?

17           MR. NAGEL:  Okay.  But before I address that issue,

18  let me just respond to what Your Honor said.

19           THE COURT:  I don't need a response.  I really --

20  I -- I think I've been --

21           MR. NAGEL:  But there was a factual --

22           THE COURT:  -- if you need to say something, please

23  say it briefly --

24           MR. NAGEL:  I will.

25           THE COURT:  -- because you're trying my patience,

1    Mr. Nagel, today.

2              MR. NAGEL:  I appreciate that.  And I'm not

3    intending to do so.

4              In that telephone conference we had in this matter,

5    I informed Your Honor that we had at least one new plaintiff.

6    I didn't say "we may."  I informed Your Honor that we had.

7              THE COURT:  In a conference call.  In your papers

8    submitted on Monday, you said you may have one.  You didn't

9    say you had one.  And I said to you, then file a motion to

10   amend in accordance with the rules of civil procedure, which

11   you did the following day.

12             MR. NAGEL:  Let me move to the other issue.  I

13   don't agree with that, Your Honor, but I'm going to move to

14   the other issue.

15             The other issue I'm raising is Your Honor granted

16   leave to file an amended complaint, which we did.  Out of the

17   abundance of caution, we filed it under seal because as

18   Mr. Pendleton had argued, we hadn't properly pled the

19   specifics of the scheme.  Your Honor found that our amended

20   complaint did plead the specifics of the scheme and allowed

21   us to move forward.  That was at least a month or so ago.

22             What I'm suggesting now is this.  There is a

23   possibility now, based upon Mr. Pendleton's current

24   application, which was first defined in his July 14th letter,

25   that he wants a dismissal based upon the settlement.  There

1    is a possibility that that will done.  And that dismissal

2    will then raise potential -- I don't know if they're bona

3    fide -- but potential statute of limitations defenses and

4    potentially limit the damage period.

5            Therefore, since we've moved to amend with regard

6    to one of the centers and since I expect to have several more

7    in the next few days, I will probably be filing new actions.

8    I would like to file those new actions not under seal, the

9    same way that we had moved before Your Honor in this case to

10   allow the amended complaint, which we filed per Your Honor's

11   direction --

12           THE COURT:  What's your request?

13           MR. NAGEL:  That Your Honor rule on our application

14   that the complaint we filed in this case --

15           THE COURT:  There's no application.  If you want to

16   file a separate action anywhere in America, you do it in

17   accordance with principles of good lawyering and accordance

18   with the federal rules of civil procedure.  I'm not going to

19   offer advisory opinions.  There's a motion to amend before

20   me.  There's one motion.  I have a briefing schedule.  I'll

21   take it under advisement.  I'm not offering advisory

22   opinions.

23           MR. NAGEL:  No, I'm not asking that.  There's a

24   pending motion, Judge.  We filed it already.  I'm asking you

25   simply to decide it.  In this case.

1              THE COURT:  The motion to seal.

2              MR. NAGEL:  No, Judge.  Let me give Your Honor what

3    happened.

4              Your Honor granted us leave -- last time we were

5    physically in court, Your Honor granted us leave to file an

6    amended complaint, which we did.

7              THE COURT:  I remember.

8              MR. NAGEL:  We filed it out of an abundance of

9    caution under seal.  And then we filed a motion and said it

10   does not have to be under seal.  Your Honor gave until the

11   next Monday, any objections by Mr. Pendleton.  He gave

12   objections.  We filed the motion.  That's pending.

13             All I'm asking -- we've already filed it.  I'm

14   asking if Your Honor would decide it.

15             THE COURT:  I'm not going to decide it now.  I'll

16   decide it under advisement on my terms, on my schedule,

17   you'll get a ruling.  I'm not ruling on it right now.  Be

18   guided accordingly.

19             Anything further?

20             MR. PENDLETON:  Your Honor, just want to remind the

21   Court that we talked about this in the conference call the

22   other day, and this was one of the two motions I said we

23   would hold in abeyance; Your Honor agreed that they'd be

24   stayed pending what happened here with respect to this

25   settlement.

```
 1              THE COURT:  Right.

 2              MR. PENDLETON:  We have never responded to that

 3   motion.  And I would just ask if -- if we're going to be --

 4              THE COURT:  Same briefing schedule.  Do it by next

 5   week.

 6              MR. PENDLETON:  Okay.  Thank you.

 7              THE COURT:  The 25th.  Okay?  Thank you.

 8              (Conclusion of proceedings at 12:20 p.m.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          Certification

 2          I, SARA L. KERN, Transcriptionist, do hereby certify

 3     that the 26 pages contained herein constitute a full, true,

 4     and accurate transcript from the official electronic

 5     recording of the proceedings had in the above-entitled

 6     matter; that research was performed on the spelling of proper

 7     names and utilizing the information provided, but that in

 8     many cases the spellings were educated guesses; that the

 9     transcript was prepared by me or under my direction and was

10     done to the best of my skill and ability.

11          I further certify that I am in no way related to any of

12     the parties hereto nor am I in any way interested in the

13     outcome hereof.

14

15

16

17

18     S/ Sara L. Kern                    July 22, 2011

19     Signature of Approved Transcriber              Date

20

21
       Sara L. Kern, CET**D-338
22     King Transcription Services
       65 Willowbrook Boulevard
23     Wayne, NJ 07470
       (973) 237-6080
24

25
```